IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOZEF S.,<br><br>    **Plaintiff,**<br><br>    v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>    **Defendant.** | Case No. 18 C 3956<br><br>Magistrate Judge Beth W. Jantz |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jozef S.[2] brings this action under 42 U.S.C. § 405(g) for review of the Commissioner's decision denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. For the reasons below, the Court reverses the Commissioner's decision.

## BACKGROUND

In August 2014, Plaintiff applied for DIB, alleging a disability onset date of April 10, 2014. (R. at 174–75.) Plaintiff's application was denied initially and on reconsideration. (*Id.* at 79, 93.) Plaintiff then requested a hearing, which was held by an Administrative Law Judge ("ALJ") in November 2016. (*Id.* at 33–66.)

On June 29, 2017, the ALJ issued a decision finding that Plaintiff was not disabled and denied his request for benefits. (R. at 18–28.) Applying the five-step

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Andrew Saul as the named defendant.
[2] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

sequential evaluation process outlined in 20 C.F.R. § 404.1520, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (step 1); his pineal gland tumor, vertigo, and depression were severe impairments (step 2); none of those severe impairments met or equaled a listing for a presumptive disability (step 3); given his residual functional capacity ("RFC"), he was unable to perform his past work (step 4); and he could still work as a laundry worker, bagger, or dining room attendant (step 5). (*Id.* at 20–28.)

In determining Plaintiff's RFC at step 4, the ALJ determined that Plaintiff could "perform a full range of work at all exertional levels" but accounted for Plaintiff's "vertigo and trouble balancing" by finding that he could "never balance" and "never climb ladders, ropes, or scaffolds." (R. at 22, 24.)

The Appeals Council declined review, making the ALJ's determination the final decision of the Commissioner. (R. at 3.)

## DISCUSSION

The Court will uphold the ALJ's decision only if it is supported by "substantial evidence"—that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although this review is deferential, it is not "a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The ALJ must build "an accurate and logical bridge" between the evidence and his conclusion. *Jeske v. Saul*, No. 19-1870, 2020 WL 1608847, at *3

2

(7th Cir. Apr. 2, 2020) (internal quotation marks omitted) (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001)).

Plaintiff primarily challenges the ALJ's weighing of the medical opinions and faults the ALJ for not allotting controlling weight to the treating physicians' opinions concerning his physical limitations. (Dkt. 15 at 3–5.) The ALJ must evaluate "every medical opinion" in the record and assign a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c). If a treating physician's opinion is not afforded controlling weight,[3] the ALJ evaluates all of the medical opinions according to the following factors: the length, nature, and extent of the treatment relationship; the frequency of examination; the consistency and supportability of the physician's opinion; and the physician's specialty. *Id.*

The Court agrees with Plaintiff that the ALJ erred in evaluating the opinion evidence in the record. First, the ALJ failed to acknowledge several medical opinions altogether. Medical opinions are *any statements* that "reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The ALJ did

---

[3] The Social Security Administration has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed as of March 17, 2017. *See* Notice of Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298, at *1 (Mar. 27, 2017).

not cite any treating physician's opinion when evaluating the opinion evidence concerning Plaintiff's physical limitations, (*see* R. at 25), but several arguably existed.

In the discharge summary from Plaintiff's April 2014 hospital stay because of vertigo, Dr. James Ferrel noted that Plaintiff was "not yet cleared to return to work." (R. at 409–10.) Plaintiff's primary care doctor repeatedly mentioned from April to June 2014 that Plaintiff was "off work" and getting better but still was suffering the effects of vertigo. (*Id.* at 324–28.) Further, as the Commissioner acknowledges, (dkt. 21 at 2–3), Plaintiff's neurologist, Dr. Barbara Klempel, filled out a doctor's note in December 2014 that gave no end date for when Plaintiff would be able to return to work and stated that he "has not been working since April 2014 to present due to serious medical condition." (R. at 500.) These statements about Plaintiff's need to be off work fall into the broad purview of medical-opinion evidence because they are judgments that Plaintiff is not capable of performing work. It was therefore error for the ALJ to not at least address them and assign them weight according to the factors in 20 C.F.R. § 404.1527(c). *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *Bjornson v. Astrue*, 671 F.3d 640, 647–48 (7th Cir. 2012).

Next, the ALJ gave the February 2017 opinion of the state consultative examiner, Dr. Roberto Ramirez, "no weight" while assigning "great weight" to the December 2014 and May 2015 opinions of the agency's non-examining doctors, Dr. David Mack and Dr. Bernard Stevens. (R. at 25.) Generally, the medical opinion

4

of a source who has examined a plaintiff is entitled to "more weight" than an opinion of a source who has not. 20 C.F.R. § 404.1527(c)(1). Here, even though Ramirez had examined Plaintiff, the ALJ gave Ramirez's opinion "no weight" because it "rest[ed] on [Plaintiff's] own allegations rather than objective medical findings." (R. at 25.) But that reasoning is flawed. First, the Seventh Circuit has cautioned that "even physical pain often cannot be explained through diagnostics," and, thus, it is "illogical to dismiss the professional opinion of an examining [physician] simply because that opinion draws from the claimant's reported symptoms." *Aurand v. Colvin,* 654 Fed.Appx. 831, 837 (7th Cir. 2016) (unpublished opinion). Second, Ramirez did not rely solely on Plaintiff's subjective complaints; he relied on his examination of Plaintiff, which included findings that Plaintiff repeatedly felt dizzy upon movement, and review of the available information. (R. at 590–94.) As a result, Ramirez opined that, because of Plaintiff's chronic vertigo and resulting dizzy spells, Plaintiff could not lift or carry any objects, could only stand or walk 10 minutes at a time, and could not climb, balance, stoop, kneel, crouch, or crawl. (*Id*. at 584–89.) The ALJ did not explain why a physical examination, coupled with a review of Plaintiff's medical records (which contained objective testing), would be insufficient to render an opinion worthy of *any* weight.

By contrast, the ALJ gave "great weight" to Mack's and Stevens' opinions that Plaintiff had no exertional limitations. (R. at 25.) The ALJ explained only that those opinions were "consistent with the record as a whole" as "there is little to no evidence that [Plaintiff] has any exertional limitations." (*Id.*) The ALJ's terse

5

explanation is troubling on its own for two related reasons. First, those opinions were rendered in December 2014 and May 2015 and thus necessarily outdated as Plaintiff's treatment continued well past these evaluations. *See Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'") (*quoting Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). Second, the agency doctors did not examine Plaintiff, and so relied on the existing medical records to formulate their opinions. Compounding the problem, the ALJ offered no reason as to why these dated opinions of non-examining physicians should be credited over Ramirez's recent assessment of Plaintiff's condition following a physical examination. Because the ALJ failed to address the treating physicians' opinions or the discrepancies in the weight given to the medical opinions, substantial evidence does not support the decision. *See Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018).

Plaintiff also argues that the ALJ engaged in impermissible "cherry picking" of evidence. (Dkt. 15 at 5.) The ALJ must "consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020). Here, the ALJ failed to address a portion of the treatment records that cut against the conclusion that Plaintiff could perform work at all exertional levels.

As Plaintiff points out, the ALJ did not discuss any of Klempel's treatment notes. (*See* Dkt. 25 at 3–4; R. at 505–17.) These records, spanning November 2014 to September 2016, reflect findings that Plaintiff suffered from syncope, ataxia, global amnesia, and gait difficulties at different times during his treatment. (R. at 505–17.) For example, the most recent treatment record (from September 2016) noted that Plaintiff had gait difficulties including a "tendency to fall to the left." (*Id*. at 505.) Logically, ongoing issues with gait and syncope (i.e., fainting) may warrant exertional restrictions, such as limits on lifting and carrying and standing and walking. The ALJ, however, never acknowledged these records, let alone addressed the significance of the symptoms observed by Klempel.

Further, the ALJ relied on the physical therapist's assessment in August 2014 that Plaintiff's balance had improved "significantly" after physical therapy as evidence supporting his decision not to impose exertional limitations. (R. at 24, 26.) But the ALJ ignored the parts of that same assessment that tempered expectations for Plaintiff's improvement: the physical therapist noted that Plaintiff had "good to fair potential for continued progress" but thought that "[i]mprovement of his symptoms may be limited by the severity of vestibular nerve involvement." (*Id*. at 344.) And the accompanying consultation report stated that Plaintiff had made "some progress but it appears very slow." (*Id*. at 340.) This cautious assessment, coupled with the post-therapy treatment notes from Klempel showing that Plaintiff was experiencing ongoing problems as a result of his impairments, undermine the ALJ's conclusion that Plaintiff could perform work at all exertional

7

levels. (*Id.* at 24.) By failing to grapple with this evidence, the ALJ has not built "an accurate and logical bridge" supporting his determination that Plaintiff is not disabled and remand is therefore warranted.[4] *Jeske*, 2020 WL 1608847, at *3 (internal quotation marks omitted) (quoting *Dixon*, 270 F.3d at 1176).

## CONCLUSION

The Court grants Plaintiff's motion for summary judgment [15], denies the Commissioner's motion for summary judgment [21], reverses the Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**E N T E R:**

**Dated:** April 20, 2020

**BETH W. JANTZ**
**United States Magistrate Judge**

---

[4] Because the Court is remanding for further consideration of the medical evidence and plaintiff's RFC, it need not address plaintiff's last argument regarding the vocational expert's testimony at step 5. (*See* Dkt. 15 at 5.)

8